# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| KEVIN HENDRICKSON, | ) | No. 79158-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HEMPZEN ENTERPRISES, LTD.; | ) | |
| MALCOLM SOTEBEER and JANE | ) | |
| DOE SOTEBEER, husband and wife, | ) | |
| and the marital community comprised | ) | |
| thereof; GREGORY DAVENPORT and | ) | |
| CARLA DAVENPORT, husband and | ) | |
| wife, and the marital community | ) | |
| comprised thereof; DARRELL WARE | ) | |
| and CHARLOTTE WARE, husband and | ) | |
| wife, and the marital community | ) | |
| comprised thereof; and ALL OTHER | ) | UNPUBLISHED OPINION |
| OCCUPANTS, | ) | |
| | ) | FILED: December 16, 2019 |
| Appellants. | ) | |
| | ) | |

VERELLEN, J. — If a party substantially complies with the appearance requirements of CR 4, then CR 55(a) does not allow for entry of a default judgment without first providing notice of the motion for default. And if a party seeking a default judgment purposefully deprives an opposing party of notice and misleads the trial court about whether the opposing party appeared and was entitled to notice, then the default judgment should be vacated if the motion to vacate is brought within a reasonable time consistent with CR 60(b)(4).

Landlord Kevin Hendrickson knew his tenants entered an informal appearance in response to his summons and complaint for unlawful detainer, but he failed to provide notice of his default judgment motion. It is undisputed that Hendrickson expressly represented to the court that no tenant had responded or appeared. Because Hendrickson engaged in misconduct and misled the trial court to obtain a default judgment and his tenants moved to vacate within a reasonable time of learning about the judgment against them, the trial court should have vacated the judgment under CR 55(c)(1) and CR 60(b)(4).

Therefore, we reverse.

## FACTS

M. Scott Sotebeer, Gregory Davenport, Darrell Ware, their spouses, and their company Hempzen Enterprises, Ltd., (collectively, "Tenants") began renting a commercial property from Hendrickson in May of 2014. Tenants stopped paying rent in February of 2015. On October 5, Hendrickson gave them a 10-day notice to pay rent or quit the premises. Later that month, Hendrickson served a summons and complaint for unlawful detainer. He did not file the complaint at that time. On November 21, Hendrickson served each tenant with an amended summons and complaint. He still did not file the complaint. On November 30, Tenants quit the premises.[1]

---

[1] On reconsideration, Hendrickson asserted the condition of the premises made unclear whether Tenants actually quit them. Regardless, it is undisputed that Tenants left the premises and did not return to them after November 30.

On December 14, Hendrickson filed his unlawful detainer action simultaneously with a motion for default and default judgment. He did not serve Tenants with notice of the motion for default judgment. To support his motion for default, Hendrickson and his attorney filed declarations stating that Tenants failed to appear or respond to the summons. The court granted a $95,000 default judgment the same day. Hendrickson recorded the judgment two weeks later.

In 2018, Tenants learned about the default judgment and moved to vacate. The court denied the motion to vacate and denied a motion to reconsider, concluding Tenants failed to appear and, even if they had appeared, failed to bring their motion to vacate within a reasonable time.

Tenants appeal.

## ANALYSIS

We review denial of a motion to vacate for abuse of discretion.[2] A court abuses its discretion where it bases its decision on untenable reasons or untenable grounds.[3]

Washington courts favor meritorious judgments over default judgments.[4] We "liberally set aside default judgments pursuant to CR 55(c)[,] CR 60[,] and for equitable reasons in the interests of fairness and justice."[5]

---

[2] Castellon v. Rodriguez, 4 Wn. App. 2d 8, 14, 418 P.3d 804 (2018).

[3] Sacotte Const., Inc. v. Nat'l Fire & Marine Ins. Co., 143 Wn. App. 410, 415, 177 P.3d 1147 (2008).

[4] Id. at 414.

[5] Morin v. Burris, 160 Wn.2d 745, 749, 161 P.3d 956 (2007).

It is long-established in Washington that a party deserves notice of a default judgment motion where they substantially comply with the appearance requirements of CR 4.[6] CR 55(a)(1) allows entry of default judgment against a party who has failed to appear. Under CR 55(a)(3), a party who has appeared is entitled to written notice of the motion for default. We will set aside a default judgment if the party entitled to notice of the motion for default did not receive notice and the requirements of CR 60 are met.[7]

The parties dispute whether Tenants appeared and were entitled to notice of Hendrickson's motion for default. To determine whether a party appeared, we consider whether the defendants' conduct was intended to and, in fact, did apprise the plaintiff of their intent to litigate the case.[8] Before the litigation is commenced, mere correspondence between the parties is insufficient to substantially comply with CR 4.[9] "Those who are served with a summons must do more than show

---

[6] See id. (explaining a default judgment "will be set aside" where a defendant does not receive notice of a default judgment motion after substantially complying with appearance requirements of CR 4); Tiffin v. Hendricks, 44 Wn.2d 837, 843-44, 271 P.2d 683 (1954) (holding that notifying only opposing counsel of an appearance was sufficient to require notice of a motion for default); see also State ex rel. Trickel v. Super. Ct. of Clallam Cty., 52 Wash. 13, 15-16, 100 P. 155 (1909) (because only "substantial compliance" with appearance statute was sufficient, premature service of interrogatories established an appearance and entitled the party to notice).

[7] Sacotte, 143 Wn. App. at 415 (citing Morin, 160 Wn.2d at 749); CR 55(c)(1).

[8] Servatron, Inc. v. Intelligent Wireless Products, Inc., 186 Wn. App. 666, 675, 346 P.3d 831 (2015) (citing Morin, 160 Wn.2d at 755).

[9] Morin, 160 Wn.2d at 757.

intent to defend; they must in some way appear and acknowledge the jurisdiction of the court after they are served and litigation commences."[10] Once an attorney appears, the defendant has appeared even if counsel later withdraws.[11]

Here, Hendrickson acknowledges that litigation was commenced by service of a summons and complaint for unlawful detainer on October 31, 2015.[12] On November 4, Tenants' attorney Collin Roberts e-mailed Hendrickson's attorney:

> I'm in the middle of gathering info from my client about rent payments. They are still tracking down cancelled checks, receipts, etc., but attached [to this email] is a good portion of receipts and checks showing rent payments through August of this year. . . . I plan on filing a Notice of Appearance shortly but the claims you've made in your complaint are largely rebutted by these payments so I believe we should at least have a conversation about this prior to moving forward with the lawsuit.[13]

Roberts could not have filed a formal notice of appearance with the court, however, because Hendrickson had not yet filed the unlawful detainer action.[14]

Around November 17, attorney Synthia Melton took over representation from Roberts, and Roberts notified Hendrickson's attorney of the change. That same day, Hendrickson's attorney wrote he had been "instructed to file this matter

---

[10] Morin, 160 Wn.2d at 749.

[11] See Tiffin 44 Wn.2d at 844 (withdrawal of defendant's counsel did not rescind counsel's appearance).

[12] An action is commenced by proper service of a valid summons and a complaint. CR 3(a). Tenants do not contest the validity of the summons or the process used to serve it.

[13] Clerk's Papers (CP) at 142.

[14] See CP at 58 (e-mail from November 25, 2015, stating the lawsuit still had not been filed).

and set a show cause hearing."[15] He also wrote, "I would prefer to settle this without filing the case, but the opportunity to do so will lapse if my client does not perceive there to be significant movement toward resolution in short order."[16] A few days later, Hendrickson served the Tenants with an amended summons and complaint. On November 25, Hendrickson's attorney e-mailed Melton the amended summons and complaint "[f]or your information and records."[17] On November 30, Melton emailed Hendrickson's attorney to notify him "that the property has been vacated by everyone and your client can take possession" and that she was "withdrawing my representation of Hempzen or it's [sic] members."[18] Two weeks later and without notice, Hendrickson filed the action for unlawful detainer, the motion for default and default judgment, and a declaration attesting that the defendants had not appeared and were in default.[19]

Hendrickson relies on Morin v. Burris[20] to argue Tenants' attorneys' conduct did not substantially comply with CR 4 and so Tenants never appeared. But Morin holds that prelitigation contacts alone are insufficient to constitute an informal appearance.[21]

---

[15] CP at 100-101.

[16] CP at 101.

[17] CP at 102.

[18] CP at 66.

[19] CP at 15-16, 17, 20, 25.

[20] 160 Wn.2d 745, 161 P.3d 956 (2007).

[21] Id. at 757.

Here, it is undisputed that the lawsuit commenced upon service of the first summons and complaint in October 2015.[22] After litigation commenced, Tenants' attorney Roberts acknowledged the complaint, the possibility of litigation "moving forward," and disputed the amount of rent owed. Significantly, Roberts intended to file a formal appearance with the court but could not have done so because Hendrickson had not yet filed the lawsuit. Melton took over for Roberts, and Hendrickson acknowledged her representation by sending her the same amended summons and complaint he served on her clients. Tenants quit the premises only after receiving Hendrickson's summons and complaint for unlawful detainer. On these facts, Tenants' acknowledged the existence of a genuine legal dispute and showed their desire to contest it. This substantially complied with CR 4.[23] Because Tenants' attorneys' conduct constituted an informal appearance on Tenants' behalf, Tenants were entitled to notice of Hendrickson's motion for default and default judgment.[24]

Failure to provide notice is a serious procedural error that renders the judgment voidable and justifies vacation when the requirements of CR 60 are met.[25] Although Tenants' trial court motions and supporting materials do not refer

---

[22] CR 3(a).

[23] See Sacotte, 143 Wn. App. at 416 ("[T]he test for whether a party's conduct constitutes an informal appearance is . . . whether the party, after the suit has commenced, has shown intent to defend in court.") (citing Morin, 160 Wn.2d at 749).

[24] Morin, 160 Wn.2d at 754 (citing Tiffin, 44 Wn.2d at 847); CR 55(a)(3).

[25] Rabbage v. Lorella, 5 Wn. App. 2d 289, 298, 300, 426 P.3d 768 (2018). Tenants rely on Colacurcio v. Burger, 110 Wn. App. 488, 497, 41 P.3d 506 (2002),

to a specific portion of CR 60, the trial court addressed whether Tenants were entitled to notice due to an appearance, whether the default judgment was voidable for failure to provide notice, and whether the motion to vacate was made within a reasonable time under CR 60. The trial court determined Tenants' motion to vacate was not brought "within a reasonable time" and cited Peoples State Bank v. Hickey[26] for the proposition a motion to vacate is not timely brought two-and-a-half years after a misrepresentation was made in the default motion.[27] Because CR 60(b)(4) governs motions to vacate for misrepresentation or misconduct, the question at the core of this appeal is whether the requirements of CR 60(b)(4) have been met.[28]

---

and Servatron, 186 Wn. App. at 678-81, to argue failure to provide notice makes a default judgment void. Both decisions rely on Tiffin, which stated that a party who did not receive notice of a default "may have such a default judgment set aside as a matter of right." 44 Wn.2d at 847. But as Rabbage explains, failure to provide notice of a motion does not strip a court of its subject matter jurisdiction, so the default judgment would only be voidable and not void. 5 Wn. App. 2d at 299-300. Accordingly, the Tiffin court was simply stating that a voidable judgment must be vacated if the other requirements of CR 60 are also satisfied. Tiffin, 44 Wn.2d at 847. To the extent Colacurcio and Servatron overextended Tiffin, they are not compelling authority.

[26] 55 Wn. App. 367, 371-72, 777 P.2d 1056 (1989).

[27] CP at 161.

[28] For the first time at oral argument, Hendrickson contended CR 60(b)(4) could not be considered as a basis for vacation because Tenants failed to raise it to the trial court. Although there was no express mention of CR 60(b)(4), all parties discussed CR 60(b), and a fair reading of the order denying reconsideration shows the trial court considered CR 60(b)(4) as a basis to vacate. Notably, the Peoples State Bank case cited by the trial court turned on analysis of CR 60(b)(4), and the trial court applied the reasonable time standard that applies to a CR 60(b)(4) motion. Because we may consider a theory to vacate that was considered by the trial court, we address the issue.

8

CR 60(b)(4) authorizes vacation of a judgment obtained through the fraud, misconduct, or misrepresentation of an adverse party. "[A] default judgment <u>should</u> be set aside if the plaintiff has done something that would render enforcing the judgment inequitable."[29] To warrant vacation, the misconduct or misrepresentation "must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case."[30] The party seeking vacation bears the burden of establishing fraud, misrepresentation, or misconduct by clear and convincing evidence.[31]

Tenants argue vacation is warranted under CR 60(b)(4) because Hendrickson misled the court about Tenants' failure to appear. It is undisputed that Hendrickson and his attorney filed declarations in support of the default judgment stating that Tenants did not appear or respond to the complaint. Hendrickson and his attorney knew that Tenants informally appeared, however, because Hendrickson's attorney sent the Tenants' attorney a copy of the amended summons and complaint and engaged in negotiations about the amount of rent owed. Thus, Hendrickson misled the court about Tenants' appearance and, on these facts, engaged in misconduct by failing to provide notice of the motion for default when CR 55(a)(3) required it. "'[V]igorous advocacy is not contingent on

---

[29] <u>Morin</u>, 160 Wn.2d at 755 (emphasis added); <u>see</u> CR 55(c)(1) (allowing vacation of a default judgment for good cause and on just terms).

[30] <u>Lindgren v. Lindgren</u>, 58 Wn. App. 588, 596, 794 P.2d 526 (1990) (emphasis omitted) (citing <u>Peoples State Bank</u>, 55 Wn. App. at 372).

[31] <u>Id.</u> (citing <u>Peoples State Bank</u>, 55 Wn. App. at 372).

lawyers being free to pursue litigation tactics that they cannot justify as legitimate.'"[32] Because Hendrickson's misconduct deprived Tenants of notice and led directly to default judgment being entered against them, the trial court should have granted the motion to vacate if Tenants moved to vacate "within a reasonable time."[33]

What constitutes a reasonable time for purposes of CR 60(b) depends on the facts and circumstances of each case.[34] When considering the timeline of events, the critical period is the time between when the party seeking vacation became aware of the judgment and the filing of the motion.[35] We also consider any prejudice to the nonmoving party from the delay and whether the moving party had good reasons for failing to move sooner.[36]

In Suburban Janitorial Services v. Clarke American, this court held that the lapse of 17 months between entry of a default judgment and a motion to vacate was a reasonable time under the circumstances.[37] The court affirmed vacation under CR 60(b)(4) because, first, plaintiff's counsel engaged in misconduct by

---

[32] Sacotte, 143 Wn. App. at 418 (quoting Wash. State Physicians Inc. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 354, 858 P.2d 1054 (1993)).

[33] See Morin, 160 Wn.2d at 755 ("[A] default judgment should be set aside if the plaintiff has done something that would render enforcing the judgment inequitable.") (citing CR 60(b)(4)).

[34] Luckett v. Boeing Co., 98 Wn. App. 307, 312, 989 P.2d 1144 (1999).

[35] Ha v. Signal Elec., Inc., 182 Wn. App. 436, 454, 332 P.3d 991 (2014).

[36] Tatham v. Rogers, 170 Wn. App. 76, 99, 283 P.3d 583 (2012).

[37] 72 Wn. App. 302, 308, 863 P.2d 1377 (1993).

purposefully ignoring letters from the defendant showing it was ignorant of the default judgment against it and, second, the defendant moved to vacate promptly after learning about the judgment against it.[38]

Here, Tenants first learned of the default judgment and judgment lien against their property in 2018. After becoming aware of the judgment, Tenants attempted to resolve the issue informally with Hendrickson and, when that failed, filed the motion to vacate in early July of 2018. Assuming Tenants learned of the judgment on January 1, 2018, at most six months passed between the time Tenants learned of the default judgment and when they moved to vacate.[39] And part of that time was spent attempting to resolve the issue informally. As in Suburban, Tenants moved to vacate within a reasonable time.

Hendrickson argues vacating the default judgment would be prejudicial to him because he would "have to file releases of the liens and refile lis pendens."[40] But Hendrickson can hardly claim to be prejudiced by losing possession of liens he obtained by misleading the court and engaging in misconduct.

Tenants informally appeared, Hendrickson misled the court and engaged in misconduct to deprive Tenants of notice and obtain the default judgment, and

---

[38] Id. at 308, 310.

[39] Hendrickson appears to argue Tenants knew or should have known about the default judgment because they "were on actual notice of the action against them in court." Resp't's Br. at 22. But he cites no authority to support any theory of constructive notice in these circumstances.

[40] Resp't's Br. at 22.

Tenants moved to vacate that judgment within a reasonable time. Therefore, the trial court should have granted Tenants' motion to vacate the default judgment.[41]

Therefore, we reverse.

WE CONCUR:

_____

_____                    _____

---

[41] Because we conclude the trial court should have vacated the default judgment under CR 60(b)(4), we do not need to address the alternative theory that the default judgment was void because it includes an award of damages not authorized by RCW 59.12.170.